### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| **DAWN WASHINGTON**, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) **Case No.** |
| *v.* | ) |
| | ) |
| **EYM GROUP, INC., EYM CHICKEN,** | ) **JURY DEMANDED** |
| **L.P., EYM CHICKEN OF ILLINOIS,** | ) |
| **L.L.C., and THOMAS PETTIGREW,** | ) |
| **individually,** | ) |
| | ) |
| *Defendants.* | ) |

### COMPLAINT

Plaintiff Dawn Washington ("Ms. Washington" or "Plaintiff") complains against Defendants EYM Group, Inc. ("EYM Group"), EYM Chicken, L.P. ("EYM Chicken"), and EYM Chicken of Illinois, LLC ("EYM Chicken") for racial discrimination and harassment and hostile work environment, and unlawful retaliation in violation of the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1, *et seq* ("IHRA"); and 42 U.S.C. § 1981. Ms. Washington further complains against EYM Group, EYM Chicken, EYM Chicken-IL and Thomas Pettigrew, individually ("Mr. Pettigrew") (together "Defendants") for their failure to pay earned but unpaid wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.; the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105, *et seq.*; and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 120, *et seq.* Lastly, Ms. Washington complains against EYM Group, EYM Chicken, and EYM Chicken-IL for violating her rights under the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1, *et seq.* In support of her claims, Ms. Washington states as follows:

### JURISDICTION AND VENUE

1

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal jurisdiction) and 28 U.S.C. § 1367(a) (supplementary jurisdiction).

2. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) (venue generally) and 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Dawn Washington ("Washington" or "Plaintiff") is an individual and citizen of Peoria, Peoria County, Illinois.

4. Defendant EYM Group, Inc. ("EYM Group") is a for-profit corporation established in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

5. Defendant EYM Chicken, L.P. ("EYM Chicken") is a for-profit limited partnership organized in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

6. Defendant EYM Chicken of Illinois, L.L.C. ("EYM Chicken-IL" or "Defendant") is a for-profit limited liability company organized in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

7. Defendant Thomas Pettigrew ("Pettigrew") is an individual who, upon information and belief, resides in the State of Illinois.

## ADMINISTRATIVE EXHAUSTION

8. On April 27, 2023, Ms. Washington filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") against EYM Chicken-IL, Charge No. 2023SF1389 ("IDHR Charge"). The IDHR Charge is attached as **Exhibit 1**.

9. In her IDHR Charge, Ms. Washington alleged that EYM Chicken-IL is liable for racial harassment – hostile work environment; and constructive discharge due to race.

10. At the time Washington filed her IDHR Charge, it was cross-filed with the EEOC.

11.    On October 22, 2024, the Illinois Department of Human Rights issued its Notice of Substantial Evidence as to Counts A and B ("IDHR Notice"). The IDHR Notice is attached as **Exhibit 2**.

12.    The IDHR made a finding of substantial evidence with respect to both of Ms. Washington's claims. *Id.*

13.    The IDHR Notice states in part that Ms. Washington may "[c]ommence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed." *Id.*

14.    Ms. Washington now files this Complaint within 90 days of receipt of the IDHR Notice.

**FACTS**

The EYM Entities' Close Relationship

15.    EYM Chicken-IL is a privately held company that managed and operated Kentucky Fried Chicken ("KFC") restaurants across Illinois.

16.    EYM Chicken-IL operated KFC restaurants locations at 2231 W. Glen Avenue, Peoria, Illinois 61614 ("Glen Avenue"); 603 N. Western Avenue, Peoria, Illinois 61604 ("Western Avenue"); and 5602 South Washington, Bartonville, Illinois 61607 ("Bartonville").

17.    EYM Chicken-IL is owned, managed, and operated by EYM Chicken.

18.    EYM Chicken is a KFC franchisee that owns franchises through subsidiary companies, including EYM Chicken-IL, in Illinois, Indiana and Wisconsin.

19.    EYM Chicken is owned, managed, and operated by EYM Group.

20.    EYM Group owns, manages, and operates companies throughout the United States that operate restaurant franchises.

3

21. EYM Group, EYM Chicken, and EYM Chicken-IL share the same business address.

22. At all times relevant to the Complaint, EYM Group, EYM Chicken, and EYM Chicken-IL shared common ownership and management.

23. Diaz is EYM Group's founder, and its CEO at all times relevant to the Complaint.

24. At all times relevant to the Complaint, EYM Group, EYM Chicken, and EYM Chicken-IL's manager and owner was Eduardo Diaz.

25. EYM Chicken-IL's July 29, 2024 Illinois Limited Liability Application for Reinstatement Following Administrative Dissolution or Revocation was submitted to the Illinois Secretary of State by EYM Chicken-IL's Director, Salvador Elias. The Application also identifies EYM Chicken as its manager.

26. As of January 19, 2025, Salvador Elias' LinkedIn profile provides that he has served as EYM Group's Director of Legal Services from May 2013 through November 2024.

27. At all times relevant to the Complaint, Claudia Cavazos, was EYM Group's, EYM Chicken's, and EYM Chicken-IL's Human Resources Benefits Payroll Manager.

28. In August 2024, EYM Chicken-IL and EYM Chicken shut down all of their respective KFC restaurants.

29. As of January 19, 2025, EYM Group's website no longer lists EYM Chicken or any KFC restaurants as affiliated franchises.

30. Upon information and belief, EYM Chicken no longer conducts regular business in the chicken restaurant space.

31. Upon information and belief, EYM Chicken no longer conducts regular business in the chicken restaurant space because EYM Group undercapitalized it.

32. The decision to close down EYM Chicken-IL's Illinois KFC restaurants was made by owners and managers of EYM Chicken and EYM Group.

33.     EYM Chicken undercapitalized EYM Chicken-IL, leading to EYM Chicken-IL's KFC restaurants being shut down.

34.     EYM Group undercapitalized EYM Chicken and EYM Chicken-IL, leading each to cease operations.

35.     EYM Chicken-IL established work rules and established compensation rates and benefits, including but not limited to those described herein, in concert and at the direction of EYM Group and EYM Chicken.

36.     EYM Group exerted control over EYM Chicken and EYM Chicken-IL's terms and conditions of employment, and EYM Chicken exerted control over EYM Chicken-IL's terms and conditions of employment.

37.     EYM Group and EYM Chicken and their agents control the employee records for EYM Chicken-IL employees.

38.     EYM Group and its agents established the rate and method of payment to EYM Chicken's and EYM Chicken-IL's employees, and EYM Chicken and its agents established the rate and method of payment to EYM Chicken-IL's employees.

39.     EYM Group and its agents had the power to hire and fire EYM Chicken's and EYM Chicken-IL's employees, and EYM Chicken and its agents had the power to hire and fire EYM Chicken-IL's employees.

40.     Based on the close relationship illustrated by the facts above, EYM Group and EYM Chicken have forfeited their limited liability with respect to Ms. Washington's claims.

41.     Further, should Ms. Washington establish that EYM Chicken-IL is liable for the claims alleged herein, justice requires that EYM Group and EYM Chicken not be permitted to escape EYM Chicken-IL's liabilities given that EYM Group undercapitalized EYM Chicken and EYM Chicken-IL, and EYM Chicken undercapitalized EYM Chicken-IL.

Ms. Washington's Employment, Constructive Discharge, and Unpaid Wages

42.    Ms. Washington was employed by EYM Chicken-IL from 2014 until 2022.

43.    From the time of her hire until March 2021, Ms. Washington worked in various positions including Cook, Cashier, Shift Manager, and Manager.

44.    In March 2021, Ms. Washington was promoted to the role of EYM Chicken-IL General Manager. As EYM Chicken-IL General Manager, Ms. Washington was responsible for overseeing the Glen Avenue, Western Avenue, and Bartonville KFC locations.

45.    Ms. Washington served as EYM Chicken-IL General Manager until July 2, 2022.

46.    Ms. Washington was the only Caucasian employee at any of these locations.

47.    At all relevant times, it was EYM Chicken-IL's policy to deliver employees' paychecks on Fridays, and for the General Managers to distribute the paychecks to employees on the following Monday.

48.    On Friday, July 1, 2022, at approximately 9:00 a.m., Ms. Washington arrived at the Glen Avenue location.

49.    When Ms. Washington arrived to the Glen Avenue store, two Glen Avenue employees Brittany Embrey and Roger Pickett, both of whom are not Caucasian, were waiting for their paychecks.

50.    Ms. Washington told Ms. Embrey and Mr. Pickett that she could not distribute their paychecks until Monday, July 4, 2022, per EYM Chicken-IL's policy.

51.    Ms. Embrey and Mr. Pickett became irate because they would be unable to cash their checks on July 4, 2022, due to the Independence Day holiday, and because they would not have their money during the holiday weekend.

52.    In full view of the KFC dining area, Mr. Pickett began screaming at Ms. Washington. Mr. Pickett called her a "fat white bitch" and a "lazy white bitch" several dozen times in the course of

6

approximately 15 minutes. Mr. Pickett told Ms. Washington that he was going to call his sister and mother and instruct them to come to Glen Avenue location so they could "whoop [her] ass." Mr. Pickett then called someone on his cell phone and continuously referred to Ms. Washington as a "white bitch."

53.    Ms. Washington became fearful, and placed a telephone call to her direct supervisor, District Manager Thomas Pettigrew, from the back office of the restaurant for assistance.

54.    During the phone call, Ms. Washington told Mr. Pettigrew of the altercation that had occurred with Mr. Pickett and Ms. Embrey.

55.    Mr. Pettigrew reaffirmed procedure for check distribution, and instructed Ms. Washington not to give checks to employees until the following Monday.

56.    Mr. Pettigrew told Ms. Washington that he was on his way to Glen Avenue location.

57.    During the phone call with Mr. Pettigrew, Mr. Pickett continued screaming obscenities and slurs at her, which Mr. Pettigrew heard over the telephone.

58.    Mr. Pettigrew ordered Ms. Washington to discharge Pickett.

59.    While still in the back office, Ms. Washington called out to Mr. Pickett and told him that he was fired.

60.    Mr. Pickett continued to call her a "fat white bitch," a "lazy white bitch," and a "bitch ass ho."

61.    Ms. Washington remained on the phone with Mr. Pettigrew but that she feared for her safety. Mr. Pettigrew, acknowledging Ms. Washington's fear for her safety, instructed Ms. Washington to call the police and request that they arrive to the Glen Ave restaurant.

62.    Ms. Washington placed a telephone call requesting police. The emergency services dispatcher informed Ms. Washington that police officers were on their way to the Glen Avenue location.

63.     Upon receiving the message from the dispatcher, Ms. Washington called out to Mer. Pickett from the back office that the police were on their way.

64.     Upon hearing this, Mr. Pickett left the premises and went to an adjacent parking lot to the Glen Avenue location.

65.     Several police officers arrived to the Glen Avenue location within five minutes of Ms. Washington's phone call to request police.

66.     Mr. Pickett's sister and mother also arrived at Glen Avenue location at the same time as the police, apparently in response to Mr. Pickett's to act on his previous threats of violence against her.

67.     Mr. Pettigrew arrived at the Glen Avenue location around this time. Mr. Pettigrew spoke with the police officers, Mr. Pickett, and his family members separately.

68.     The police left shortly after Mr. Pettigrew spoke with them, and that she was unable to make a report at the time due to their leaving.

69.     Ms. Washington did file a police report soon thereafter.

70.     Mr. Pettigrew brought her and Mr. Pickett together and told them that they needed to "get along."

71.     Mr. Pettigrew's instruction to "get along" with Mr. Pickett contradicted Mr. Pickett's instruction from just minutes earlier, when he instructed Ms. Washington to fire Mr. Pickett.

72.     Ms. Washington then left Glen Avenue location so that she may continue her work duties at the Western Avenue restaurant.

73.     Upon arriving at the Western Avenue, an EYM Chicken-IL employee named Kendra (non-white, title and last name unknown) ("Kendra") told Ms. Washington that she had viewed a livestream on Facebook Live that began after Ms. Washington told Mr. Pickett that she had called the police.

8

74.     Kendra told Ms. Washington that she observed Mr. Pickett continually refer to Ms. Washington as a "white bitch" on the Facebook Live stream, and that he accused Ms. Washington of not giving him his money.

75.     Ms. Washington attempted to reach EYM Chicken-IL's and EYM Group's Human Resources Benefits Payroll Manager, Claudia Cavazos, via telephone, but was unable to reach her.

76.     Ms. Washington continued to attempt to contact Ms. Cavazos for one week via telephone and left numerous voicemails. Ms. Washington never received a response.

77.     After working for approximately an hour at Western Avenue, Ms. Washington returned to the Glen Avenue location to try to find someone to cover Pickett's hours, as she had discharged him earlier that day.

78.     At approximately 2:00 p.m. Ms. Washington attended a managers' meeting at Glen Avenue. Mr. Pettigrew was in attendance.

79.     During the meeting, Mr. Pettigrew reiterated EYM Chicken-IL's general policies related to attendance, dress code, and disbursement of checks.

80.     After the meeting concluded, Ms. Washington traveled to the Bartonville location to continue working.

81.     While she was at Bartonville, Embrey called Ms. Washington from the Glen Avenue location and told her that a former employee, Diana Cruz  was there requesting her paycheck. Ms. Embrey told Ms. Cruz that she could not receive her check until Monday.

82.     Ms. Washington left the Bartonville location to return to the Glen Avenue location to speak with Ms. Cruz.

83.     Ms. Washington spoke with Ms. Cruz and informed her that she could not distribute her paycheck until Monday, based on EYM Chicken-IL's policy and Mr. Pettigrew's instructions to Complainant twice that day.

9

84.    Ms. Cruz became angry and threatened Ms. Washington, stating that she would call and complain "to get [her] bitch ass fired."

85.    Ms. Washington called Mr. Pettigrew to report what had happened with Ms. Cruz. Mr. Pettigrew told Ms. Washington not to worry about it and that he would "take care of it."

86.    Ms. Embrey told Ms. Washington that earlier in the day, while Ms. Washington was at one of the other EYM Chicken-IL restaurants, Mr. Pettigrew gave Mr. Pickett his paycheck and promoted Mr. Pickett to a managerial position.

87.    Embrey told Ms. Washington that Mr. Pettigrew told the employees at the Glen Avenue restaurant that Ms. Washington "was the problem," and to "ignore her."

88.    After finishing her shift and returning home, Mr. Pettigrew called Ms. Washington at or around 6:45 p.m.

89.    Mr. Pettigrew told Ms. Washington that he received an anonymous customer complaint about her, alleging that she was swearing at other employees while working the drive-thru window at the Glen Avenue location.

90.    Ms. Washington disputed this and told Mr. Pettigrew that she had not worked the drive-thru window that day.

91.    Ms. Washington requested to review the security footage that showed the basis of the alleged anonymous customer complaint. Mr. Pettigrew refused.

92.    Mr. Pettigrew told Ms. Washington that she was a "burden."

93.    Mr. Pettigrew refused to give Ms. Washington any additional information regarding the alleged customer complaint.

94.    Based on the harassment that she endured by Mr. Pickett, and Mr. Pettigrew's support of Mr. Pickett's harassment of her, Ms. Washington told Mr. Pettigrew that she would be resigning her position.

95.     Ms. Washington did not provide Mr. Pettigrew an effective date for her resignation.

96.     On the morning of July 2, 2022, Ms. Washington reported to work at the Bartonville location.

97.     Mr. Pettigrew arrived to the Bartonville location and instructed her to give her keys to Bartonville Manager Tonya Smith.

98.     Ms. Washington's last day of work for EYM Chicken-IL was July 21, 2022.

99.     Despite her resignation, Mr. Pettigrew convinced Ms. Washington to return to work for EYM Chicken-IL temporarily, from August 13 to August 17, 2022, to train a new General Manager.

100.    Mr. Pettigrew and Ms. Washington reached an agreement whereby Ms. Washington would be paid at her previous hourly rate of pay.

101.    Ms. Washington worked for one week without being placed on payroll.

102.    After the new hire left, Pettigrew told her that she would be terminated again because he lacked the authority to rehire her.

103.    Ms. Washington was never paid for the work that she performed for EYM Chicken-IL from August 13 to August 17, 2022.

**COUNT I: IHRA HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE AGAINST EYM GROUP, EYM CHICKEN, AND CHICKEN-IL**

104.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

105.    The IHRA states in part:

Declaration of Policy. It is the public policy of this State:

(A) Freedom from Unlawful Discrimination. To secure for all individuals within Illinois the freedom from discrimination based on race.…

775 ILCS 5/1-102(A).

106.    The IHRA defines "harassment" as:

[A]ny unwelcome conduct on the basis of an individual's actual or perceived race [or] color… that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

775 ILCS 5/1-101(E-1).

107.    The IHRA further provides that:

Civil rights violations--employment. It is a civil rights violation:

(A) Employers. For any employer… to engage in harassment as defined in subsection (E-1) of Section 2-101…. An employer is responsible for harassment by the employer's nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

775 ILCS 5/2-102(A).

108.    EYM Group and EYM Chicken are the alter egos of EYM Chicken-IL.

109.    EYM Group, EYM Chicken, and EYM Chicken-IL are each an "employer" as that term is defined under the IHRA, 775 ILCS 5/2-101(B)(1)(a).

110.    Ms. Washington was an "employee" as that term is defined under the IHRA, 775 ILCS 5/2-101(A)(1)(a) at all times relevant to this lawsuit.

111.    Ms. Washington suffered multiple incidents of race-based harassment while employed by EYM Chicken-IL.

112.    The race-based harassment that Ms. Washington was subjected to was severe and pervasive, and caused Ms. Washington to fear for her safety.

113.    Ms. Washington reported the racial harassment to EYM Chicken-IL and its agents.

114.    EYM Chicken-IL and its agents failed to take any action in response to her reports of race-based harassment.

115.    Ms. Washington reported the race-based harassment to EYM Group and EYM Chicken-IL and their agents.

116.    EYM Group and EYM Chicken-IL and their agents failed to take any action in response to Ms. Washington's reports of race-based harassment.

117.    EYM Chicken-IL deliberately made Ms. Washington's working conditions so difficult, intolerable, and unpleasant that it created a hostile and intimidating, work environment.

118.    Ms. Washington had no choice but to resign her employment in light of the working conditions that EYM Chicken-IL subjected her to.

119.    EYM Chicken-IL's failure to act on Ms. Washington's reports of race-based harassment resulted in her resignation.

120.    EYM Chicken-IL's actions constitute unlawful discrimination and a civil rights violation under the IHRA.

121.    EYM Group and EYM Chicken, as alter egos for EYM Chicken-IL, is liable for EYM Chicken-IL's discriminatory actions.

122.    Ms. Washington has been damaged by EYM Group, EYM Chicken, and EYM Chicken-IL's and EYM Group's unlawful conduct.

**COUNT II: IHRA RACE-BASED DISCRIMINATION RESULTING IN HER CONSTRUCTIVE DISCHARGE AGAINST EYM GROUP, EYM CHICKEN, EYM CHICKEN-IL**

123.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

124.    The IHRA states in part:

Declaration of Policy. It is the public policy of this State:

(A) Freedom from Unlawful Discrimination. To secure for all individuals within Illinois the freedom from discrimination based on race.…

775 ILCS 5/1-102(A).

125.    The IHRA further provides that employers are liable for a "civil rights violation" due to race-based discrimination:

Civil rights violations--employment. It is a civil rights violation:

13

(A) Employers. For any employer… to act with respect to … discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination….

775 ILCS 5/2-102(A).

126. EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

127. EYM Group, EYM Chicken, and EYM Chicken-IL are each an "employer" as that term is defined under the IHRA, 775 ILCS 5/2-101(B)(1)(a).

128. Ms. Washington was an "employee" as that term is defined under the IHRA, 775 ILCS 5/2-101(A)(1) at all relevant times.

129. Ms. Washington suffered multiple incidents of race-based harassment while employed by EYM Chicken-IL.

130. The race-based harassment that Ms. Washington was subjected to was severe and pervasive, and caused Ms. Washington to fear for her safety.

131. Ms. Washington reported the race-based harassment to EYM Group and EYM Chicken-IL and its agents.

132. EYM Group and EYM Chicken-IL and their agents failed to take any action in response to Ms. Washington's reports of race-based harassment.

133. EYM Chicken-IL deliberately made Ms. Washington's working conditions so difficult, intolerable, and unpleasant that it created a hostile and intimidating, work environment.

134. Ms. Washington had no choice but to resign her employment in light of the working conditions that EYM Chicken-IL subjected her to.

135. EYM Chicken-IL's actions constitute unlawful discrimination and a civil rights violation under the IHRA.

136. As the alter egos of EYM Chicken-IL, EYM Group and EYM Chicken are liable for the discriminatory actions taken by EYM Chicken-IL.

14

137.    Ms. Washington has been damaged by EYM Group, EYM Chicken, and EYM Chicken-IL's and EYM Group's unlawful conduct.

## COUNT III: 42 U.S.C § 1981 HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE AGAINST ALL DEFENDANTS

138.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

139.    Section 1981(a) provides, in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

140.    EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

141.    Defendant EYM Chicken-IL and Mr. Pettigrew, engaged in illegal, intentional discrimination on the basis of Ms. Washington's race, by creating a hostile work environment.

142.    The harassment was severe *and* pervasive, was objectively and subjectively offensive, was humiliating, and had the effect of substantially interfering with Ms. Washington's work performance.

143.    As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress and the loss of her employment.

144.    Defendants' actions proximately caused Ms. Washington's injuries.

## COUNT IV: 42 U.S.C § 1981 DISCRIMINATION BASED ON RACE RACE-BASED DISCRIMINATION RESULTING IN HER CONSTRUCTIVE DISCHARGE AGAINST ALL DEFENDANTS

145.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

146.    Section 1981(a) provides, in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

147.    EYM Group and EYM Chicken are alter egos of EYM Chicken-IL

148.    Defendants EYM Chicken-IL and Mr. Pettigrew engaged in illegal, intentional discrimination on the basis of Ms. Washington's race, by engaging in disparate treatment.

149.    Ms. Washington suffered adverse employment actions, to wit, Defendants creating a hostile work environment that made her working conditions so difficult, intolerable, and unpleasant that she was forced to resign.

150.    As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress and the loss of his employment.

151.    Defendants' actions proximately caused Ms. Washington's injuries.

**COUNT V: 42 U.S.C § 1981 RETALIATION AGAINST ALL DEFENDANTS**

152.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

153.    Section 1981(a) provides, in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

154.    EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

155.    Defendants EYM Chicken-IL and Mr. Pettigrew engaged in illegal, retaliation, on the basis of Ms. Washington submitting a complaint regarding racial discrimination.

16

156.    Ms. Washington suffered adverse employment actions, to wit, Defendants creating a hostile work environment that made her working conditions so difficult, intolerable, and unpleasant that she was forced to resign.

157.    As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress, lost training opportunities, disparate pay, and the loss of his employment.

158.    Defendants' actions proximately caused Ms. Washington's injuries.

### COUNT VI: FLSA FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS

159.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

160.    The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" no less that $7.25 per hour of work. 29 U.S.C. § 206(a)(1)(C).

161.    Each of the Defendants is an "employer" as that term is defined under the FLSA. 29 U.S.C. § 203(d).

162.    Ms. Washington was an "employee" as that term is defined under the FLSA. 29 U.S.C. § 203(e)(1).

163.    Ms. Washington performed work for Defendants, at the direction of Mr. Pettigrew, from August 13, 2022 to August 17, 2022.

164.    Ms. Washington performed work for the benefit of the Defendants.

165.    Ms. Washington received no compensation for the work that she performed during this time period.

166.    Defendants failed to pay the FLSA-mandated minimum wage to Ms. Washington for the work that she performed during this time period.

167. Defendants' failure to pay Ms. Washington the minimum wage during this time period constitutes a violation of the FLSA's minimum wage provision.

168. Defendants' violation of the FLSA was not in good faith.

169. Ms. Washington has been damaged by Defendants' violation of the FLSA.

## COUNT VII: IMWL FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS

170. Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

171. The IMWL's minimum wage provision provides in part that, "from January 1, 2022 through December 31, 2022 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $12 per hour…." 820 ILCS 105/4(a).

172. Ms. Washington was 18 years of age at all times in 2022.

173. Each of the Defendants was an "employer" as defined under the IMWL. 820 ILCS 105/3(c).

174. Ms. Washington was an "employee" as defined under the IMWL. 820 ILCS 105/3(d).

175. Ms. Washington performed work for EYM Chicken-IL, at the direction of Mr. Pettigrew, from August 13, 2022 to August 17, 2022.

176. Ms. Washington performed work for the benefit of the Defendants.

177. Ms. Washington received no compensation for the work that she performed during this time period.

178. Defendants failed to pay the IMWL-mandated minimum wage to Ms. Washington for the work that she performed during this time period.

179. Defendants' failure to pay Ms. Washington the minimum wage during this time period constitutes a violation of the IMWL's minimum wage provision.

180. Ms. Washington has been damaged by Defendants' violation of the IMWL.

## COUNT VIII: IWPCA FAILURE TO PAY AGREED WAGES AGAINST ALL DEFENDANTS

181. Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

182. The IWPCA provides in part:

For all employees, other than separated employees, "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation.

820 ILCS 115/2.

183. The IWPCA further provides that, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

184. The IWPCA further provides that, "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

185. Each of the Defendants is an "employer" as that term is defined under the IWPCA. 820 ILCS 115/2.

186. Ms. Washington was an "employee" from August 13, 2022 to August 17, 2022, as that term is defined under the IWPCA. 820 ILCS 115/2.

187. Mr. Pettigrew hired Ms. Washington to train EYM's new General Manager.

188. Mr. Pettigrew and Ms. Washington reached an agreement whereby Ms. Washington would be paid at her previous hourly rate of pay.

189. Ms. Washington performed work under her wage agreement from August 13, 2022 to August 17, 2022, to train a new General Manager.

190. Ms. Washington performed work for the benefit of the Defendants.

191.    Ms. Washington was never compensated for the work that she performed under the wage agreement.

192.    Mr. Pettigrew knowingly permitted EYM Chicken-IL and EYM Group to fail to pay Ms. Washington for the work that she performed during this time period.

193.    As such, Mr. Pettigrew is personally liable under the IWPCA. 820 ILCS 115/13.

194.    Defendants' failure to pay Ms. Washington under the wage agreement constitutes a violation of the IWPCA.

195.    Ms. Washington has been damaged under the IWPCA.

### COUNT IX: RETALIATION UNDER THE ILLINOIS WHISTLEBLOWER ACT AGAINST EYM GROUP, EYM CHICKEN, EYM CHICKEN-IL

196.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

197.    The IWA states in part,

§ 15. Retaliation for certain disclosures prohibited.

(b) An employer may not take retaliatory action against an employee for disclosing or threatening to disclose information to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety.

740 ILCS 174/15(a) and (b).

198.    Defendants EYM Group, EYM Chicken, and EYM Chicken-IL were Ms. Washington's "employer," and Ms. Washington was their "employee," as defined under the IWA.

199.    Ms. Washington disclosed to local law enforcement Pickett's threatening and abusive activity.

200.    EYM Chicken-IL and its agents were aware of Pickett's threatening and abusive activity and Ms. Washington's disclosure to local law enforcement.

201.    EYM Chicken-IL retaliated against Ms. Washington for disclosing Pickett's threatening and abusive activity by failing to remedy the harassment she sustained, and creating a hostile work environment that made her working conditions so difficult, intolerable, and unpleasant that she was forced to resign

202.    Ms. Washington has been damaged as a result of the EYM entities' retaliation, including but not limited to severe emotional distress and the loss of his employment

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dawn Washington respectfully requests that this Court enter judgment in her favor and against Defendants EYM Group, Inc., EYM Chicken, L.P., EYM Chicken of Illinois, L.L.C., and Thomas Pettigrew, individually, and award damages in an amount to be proven at trial, which include:

    a)  Compensatory damages, including but not limited to damages arising from Ms. Washington's mental anguish and emotional distress due to Defendants' unlawful acts;

    b)  Back pay (including interest and benefits);

    c)  Front pay (including interest and benefits);

    d)  Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

    e)  Statutory damages;

    f)  Damages in the form of unpaid minimum wage pay under the FLSA and IMWL;

    g)  Liquidated damages in the amount of double her actual damages under the FLSA for minimum wage pay violations;

    h)  Statutory damages for minimum wage pay violations, including 5% monthly interest penalties and treble damages, as provided by the IMWL (820 Ill. Comp. Stat. 105/12(a);

    i)  The amount of Ms. Washington's earned and unpaid wages in accordance with the IWPCA;

    j)  Statutory damages of 5% monthly interest in accordance with the IWPCA, 820 ILCS 115/14;

k) Costs incurred by this lawsuit, including attorneys' fees to the extent allowable by law;

l) Pre-judgment and post-judgment interest, as provided by law; and

m) Such other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Ms. Washington demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38.

Date: January 19, 2025

Respectfully submitted,

DAWN WASHINGTON

*/s/ Alexandros Stamatoglou*
Plaintiff's Attorney

Garfinkel Group, LLC
701 N. Milwaukee Avenue, The CIVITAS
Chicago, IL 60642
Max P. Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Alexandros Stamatoglou (IARDC No. 6308169)
alex@garfinkelgroup.com
t: (312) 736-7991
f: (312) 549-9623

22