IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

DAWN WASHINGTON,
    Plaintiff,

v.

EYM GROUP Inc. et. al,
    Defendant.

Case No. 1:25-cv-01021-JEH-RLH

**Order**

Now before the Court is the Defendants' Motion to Dismiss (D. 14).[1] For the reasons set forth *infra*, the Court denies the Motion to Dismiss as to Counts One through Eight and grants the Motion to Dismiss as to Count Nine.

**I**

On January 19, 2025, the Plaintiff filed her Complaint. (D. 1). On September 10, 2025, the Defendants filed a Motion to Dismiss. (D. 14). Plaintiff filed her response on October 1, 2025. (D. 16). The matter is now fully briefed.

**II**

According to the Complaint, Plaintiff Dawn Washington ("Washington") is from Peoria County, Illinois. (D. 1 at ECF p. 2). The Defendants include EYM Group, Inc. ("EYM Group"), a for-profit corporation, EYM Chicken, L.P. ("EYM Chicken"), a for-profit limited partnership, EYM Chicken of Illinois, L.L.C. ("EYM Illinois"), a for-profit limited liability company, and Thomas Pettigrew ("Pettigrew"), an individual residing in Illinois. *Id.* On April 27, 2023, Washington filed a Charge of Discrimination with the Illinois Department of Human Rights

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

("IDHR") against EYM Illinois.[2] *Id.* On October 22, 2024, the IDHR issued its "Notice of Substantial Evidence" and right to sue. *Id.* at ECF p. 3.

Plaintiff alleges that EYM Illinois managed and operated Kentucky Fried Chicken ("KFC") restaurants across Central Illinois and is owned by EYM Chicken, a franchisee that owns franchises through subsidiaries, including EYM Illinois. *Id.* In turn, Plaintiff alleges EYM Chicken is owned, managed, and operated by EYM Group, which owns, manages, and operates companies throughout the United States that operate restaurant franchises. *Id.* Plaintiff claims that the three entities share the same business address, common management, and are all owned by Eduardo Diaz. *Id.* at ECF p. 4. However, Plaintiff states that EYM Illinois and EYM Chicken no longer conduct business in "the chicken restaurant space because EYM Group undercapitalized it." *Id.* Furthermore, Plaintiff alleges that EYM Illinois "established work rules and established compensation rates and benefits . . . in concert and at the direction of EYM Group and EYM Chicken." *Id.* at ECF p. 5.

Washington alleges she worked for EYM Illinois from 2014 until 2022. *Id.* at ECF p. 6. She served in various roles "including Cook, Cashier, Shift Manager, and Manager." *Id.* In March of 2021, she was promoted to General Manager of EYM Illinois, responsible for "overseeing the Glen Avenue, Western Avenue, and Bartonville KFC locations." *Id.* She held that role until July 2, 2022, and was the "only Caucasian employee at any of these locations." *Id.* Pursuant to EYM Illinois policy, employees' paychecks were delivered on Fridays and "the General Managers [were] to distribute the paychecks to employees on the following Monday." *Id.* "On Friday, July 1, 2022, at approximately 9:00 a.m., Ms. Washington arrived at the Glen Avenue location." *Id.* "When Ms. Washington arrived to the

---

[2] The Charge was cross-filed with the Equal Employment Opportunity Commission. *Id.*

Glen Avenue store, two Glen Avenue employees Brittany Embrey ("Embrey") and Roger Pickett ("Pickett"), both of whom are not Caucasian, were waiting for their paychecks." *Id.* Washington told them "she could not distribute their paychecks until Monday" pursuant to EYM Illinois policy. *Id.* Subsequently, Washington alleges that Embrey and Pickett "became irate because they would be unable to cash their checks on July 4, 2022, due to the Independence Day holiday, and because they would not have their money during the holiday weekend." *Id.* Washington alleges that, "[i]n full view of the KFC dining area, Mr. Pickett began screaming at Ms. Washington." *Id.* Pickett "called her a 'fat white bitch' and a 'lazy white bitch' several dozen times in the course of approximately 15 minutes." *Id.* at ECF p. 6-7. Pickett allegedly told Washington "that he was going to call his sister and mother and instruct them to come to [the] Glen Avenue location so they could 'whoop [her] ass.'" *Id.* at ECF p. 7. Pickett "then called someone on his cell phone and continuously referred to [Washington] as a 'white bitch.'" *Id.* Out of fear, Washington "placed a telephone call to her direct supervisor, District Manager Thomas Pettigrew, from the back office of the restaurant for assistance" and informed him of the altercation with Pickett and Embrey. *Id.* Pettigrew "reaffirmed procedure for check distribution, and instructed" Washington not to distribute the checks until the following Monday and stated he "was on his way to [the] Glen Avenue location." *Id.* During the call, Pettigrew allegedly overheard Pickett continuing to "scream[] obscenities and slurs" at Washington and instructed Washington to discharge Pickett. *Id.* Washington then claims she told Pickett he was fired from the back office, and Pickett "continued to call her a 'fat white bitch,' a 'lazy white bitch,' and a 'bitch ass ho.'" *Id.* Still on the phone, Washington "feared for her safety" and Pettigrew instructed Washington to "call the police" to the Glen Avenue location. *Id.* Washington then informed Pickett that the police were on the way and Pickett left the premises to an adjacent parking lot. *Id.* at ECF p. 8.

Several officers arrived, along with Pickett's sister and mother "apparently" to "act on [Pickett's] previous threats of violence against [Washington]." *Id.* Pettigrew spoke with the police and Washington later filed a report. *Id.* at ECF p. 8. After the police left, Pettigrew allegedly told Washington that she and Pickett "needed to 'get along'", contradicting his earlier instruction that Washington fire Pickett. *Id.* Washington then left to continue working at the Western Avenue location where an employee, "Kendra", told Washington she "had viewed a livestream on Facebook Live that began after [Washington] told [Pickett] that she had called the police" and that "she observed [Pickett] continually refer to [Washington] as a 'white bitch'" on the livestream and that Pickett accused Washington of not giving him his money. *Id.* at ECF p. 8-9. Washington then attempted to call Claudia Cavazos, the alleged Human Resources Benefits Payroll Manager of both EYM Illinois and EYM Group, but was unable to reach her.[3] *Id.* After working for approximately an hour at the Western Avenue location, Washington returned to Glen Avenue "to try to find someone to cover Pickett's hours, as she had discharged him earlier that day." *Id.* Later, on the same day, she attended a managers' meeting with Pettigrew who reaffirmed policies related to the distribution of checks. *Id.* Washington then travelled to the Bartonville location where she was called by Embrey who told her that a former employee, Diana Cruz ("Cruz"), was there requesting her paycheck. *Id.* Washington told her she could not receive it until Monday, per EYM Illinois policy. *Id.* She then left Bartonville to return to Glen Avenue and speak with Cruz who became angry and stated she would complain to "'get [her] bitch ass fired.'" *Id.* at ECF p. 10. Washington alleges she called Pettigrew regarding the incident with Cruz and claims that Pettigrew told Washington "that he would 'take care of it.'" *Id.* While still at the Bartonville

---

[3] Washington claims she continued to call for one week, leaving voicemails, but never heard back. *Id.*

4

location, Washington alleges that Embrey told her that Pettigrew had given Pickett "his paycheck and promoted [him] to a managerial position" and told Pickett that Washington "'was the problem,' and to 'ignore her.'" *Id.*

Washington finished her shift and returned home when she received a call from Pettigrew who allegedly told her that "he received an anonymous customer complaint about her, alleging that she was swearing at other employees while working the drive-thru window at the Glen Avenue location." *Id.* Washington disputed that and said she was not working the drive-thru window that day and "requested to review the security footage that showed the basis of the alleged anonymous customer complaint." *Id.* Pettigrew refused, telling her she was a "'burden.'" *Id.* Washington then told Pettigrew that based on the harassment she endured, she would be resigning, but did not give an effective date. *Id.* at ECF p. 10-11. On the morning of July 2, 2022, Washington reported to work and Pettigrew instructed Washington to turnover her keys to the Bartonville manager. *Id.* at ECF p. 11. Washington's last day of work was July 21, 2022. *Id.* Despite her resignation, Pettigrew and Washington reached an agreement wherein Washington would train the new general manager from August 13 to August 17, 2022, and be paid at her previously hourly rate of pay. *Id.* However, Washington worked without being placed on payroll and Pettigrew told her she "would be terminated again because he lacked the authority to rehire her." *Id.* Washington claims she was never paid for the work she performed from August 13 to August 17, 2022. *Id.*

Based on these allegations, Washington filed the instant nine-Count Complaint. (D. 1). Washington alleges harassment and hostile work environment in violation of the Illinois Human Rights Act ("IHRA") in Count One, race-based discrimination resulting in constructive discharge in violation of the IHRA in Count Two, harassment and hostile work environment based on race in violation of 42 U.S.C. § 1981 in Count Three, race-based discrimination resulting in

5

constructive discharge in violation of 42 U.S.C. § 1981 in Count Four, retaliation in violation of 42 U.S.C. § 1981 in Count Five, failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL") in Counts Six and Seven, a failure to pay agreed wages in violation of the Illinois Wage Payment and Collection Act ("IWCPA") in Count Eight, and retaliation in violation of the Illinois Whistleblower Act ("IWA") in Count Nine. (D. 1 at ECF p. 11-21). The Motion to Dismiss asks the Court, pursuant to Rule 12(b)(6), to dismiss "(a) Counts I and II against EYM Group and EYM Chicken, (b) Counts III through IX against EYM Group, EYM Chicken, and Pettigrew, and (c) Count IX against EYM Group and EYM Chicken of plaintiff's complaint." (D. 14 at ECF p. 1).

### III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to

dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

## A

In Count One, the Plaintiff alleges hostile work environment and harassment based on race in violation of the IHRA. (D. 1 at ECF p. 11-12). In Count Two, the Plaintiff alleges race-based discrimination resulting in constructive discharge. *Id.* at 13-15. Both Counts are claimed against EYM Group, EYM Chicken, and EYM Illinois. *Id.* at 11-15. The Motion to Dismiss argues that Counts One and Two should be dismissed as to EYM Group and EYM Chicken because they were not named in the IDHR Charge. (D. 14 at ECF p. 5). For the reasons that follow, the Court denies the Motion to Dismiss as to Counts One and Two.

The Plaintiff does not dispute that EYM Group and EYM Chicken are not named in Plaintiff's Charge filed with the IDHR. (D. 16 at ECF p. 4-5). And both parties mistakenly cite to *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001) (discussing Title VII dismissal at summary judgment), for the ostensibly authoritative position that a "parent organization not named in the plaintiff's EEOC Charge must be dismissed from the suit unless the plaintiff can show that the parent had notice of the claim against it, as opposed to its subsidiary, and had an opportunity to conciliate on its own behalf." It is true that, "[o]rdinarily, a party not named in an EEOC charge may not be sued under *Title VII*." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989) (emphasis added). However, that is the standard that is applied to actions arising under Title VII, not the IHRA.

In a very similar case, the Seventh Circuit determined that the "district court's view . . . rests on the mistaken belief that the [IHRA] is equivalent to Title

7

VII." *Nieman v. Hale*, 541 F. App'x 693, 698 (7th Cir. 2013). "The district court . . . was led astray by [the Defendant's] premise that the absence of his name as a respondent in the original charge is fatal to [Plaintiff's] lawsuit." *Id.* "The [district] court based that conclusion not on decisions from Illinois interpreting the [IHRA] but on cases discussing Title VII." *Id.* As to the IHRA, the Seventh Circuit observed, "The absence of a party's name from an initial charge is not dispositive, however, and [the Defendant] cites no Illinois authority to the contrary." *Id.* "Instead, what's important is that a charge be 'in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.'" *Id.* (quoting 775 ILL. COMP. STAT. 5/7A-102(A)(2)). In this case, therefore, the Court does not find the Defendants' reliance on Title VII authority persuasive in the context of an action arising under the IHRA such as this one; consequently, they have failed to meet their burden of establishing the insufficiency of the Plaintiff's allegations. *Baumgartner v. City of Chi.*, 759 F. Supp. 3d 868, 874 (N.D. Ill. 2024) (citing *Marcure v. Lynn*, 922 F.3d 625, 631 (7th Cir. 2021).

Under the IHRA, the inquiry is whether the Charge was in "such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation.'" *Nieman*, 541 F. App'x at 698 (quoting 775 ILL. COMP. STAT. 5/7A-102(A)(2)). Here, the Defendants do not dispute that EYM Group and EYM Chicken are the parent organizations of EYM Illinois. (D. 14 at ECF p. 5). Similarly, they do not dispute that the same people who "owned, operated, and managed" EYM Illinois were "the same people who owned, operated, and managed EYM Group and EYM Chicken." (D. 16 at ECF p. 5). Therefore, accepting the Plaintiff's facts as true and drawing reasonable inferences in her favor regarding the Defendants' notice of the IDHR Charge, *see Ashcroft*, 556 U.S. at 678, the Court finds that it alleges sufficient detail to substantially apprise any properly concerned party at this stage. *See* 775 ILL. COMP.

STAT. 5/7A-102(A)(2). Therefore, the Court denies the Motion to Dismiss as to Counts One and Two.

**B**

In Counts Three, Four, and Five, the Plaintiff alleges harassment and hostile work environment, race-based discrimination resulting in constructive discharge, and retaliation in violation of 42 U.S.C. § 1981, respectively, and against all Defendants. (D. 1 at ECF p. 15-17). The Motion to Dismiss seeks dismissal as to EYM Group, EYM Chicken, and Pettigrew because the "underlying factual allegations only involve" EYM Illinois. (D. 14 at ECF p. 6). For the reasons that follow, the Court denies the Motion to Dismiss as to Counts Three, Four, and Five.

First, as to Pettigrew, the Motion to Dismiss claims that the allegations against him are only legal conclusions. (D. 14 at ECF p. 6). However, the Motion fails to cite any legal authority in support of that argument and the Court "cannot fill the void by crafting arguments and performing the necessary legal research". *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921 (7th Cir. 1997) (failure to cite authorities in support of a particular argument constitutes a waiver of the issue). To the contrary, the Complaint does contain well-pleaded factual allegations as to Pettigrew. *See, e.g.*, (D. 1 at ECF p. 10) (alleging Pettigrew told Pickett that Plaintiff "was the problem" and to "ignore her"). Second, as to EYM Group and EYM Chicken, the Defendants claim that the Plaintiff's allegations do not establish that they are EYM Illinois's alter egos because they are bald and conclusory.[4] (D. 14 at ECF p. 6-7). But Plaintiffs

---

[4] In Response, the Plaintiff states that the Defendants "mistakenly argue that Plaintiff must demonstrate that the EYM entities are alter egos of each other." (D. 16 at ECF p. 7). Instead, Plaintiff argues the Court ought to apply the economic realities test. *Id.* The Court notes that the Plaintiff does plead that EYM Group and EYM Chicken "are alter egos" of EYM Illinois, *see, e.g.*, (D. 1 at ECF p. 14), but neither party cites to authority demonstrating why either the alter ego test or the economic realities test ought to govern the Plaintiff's claims made pursuant to 42 U.S.C. § 1981. Moreover, that dispute is not suited for resolution at the Motion to Dismiss stage.

allegations are neither bald nor conclusory. Plaintiff alleges Diaz was the owner of all three entities, that they all share the same business address, and that EYM group exerted control over EYM Chicken and EYM Illinois through various means. (D. 1 at ECF p. 4-5). The Defendants do not appear to dispute those facts. (D. 14 at ECF p. 6-7). Instead, they argue that "[w]hile [the alter ago] analysis is premature," "there are no allegations in the complaint sufficient to lodge claims against EYM Group, EYM Chicken, [or] Pettigrew". *Id.* The Court agrees with the Defendants to the extent they concede the alter-ego analysis is premature at this juncture. But, as discussed, Plaintiff's Complaint does contain sufficient factual allegations under the notice pleading standard, and the Court must draw all reasonable inferences in the Plaintiff's favor. She must only "give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. "Details and proofs come later." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024). Therefore, the Court denies the Motion to Dismiss as to Counts Three, Four, and Five.

## C

In Counts Six, Seven, and Eight, the Plaintiff alleges a violation of the FLSA, the IMWL, and the IWCPA, respectively. (D. 1 at ECF p. 17-20). In response, the Defendants argue that Counts Six, Seven, and Eight must be dismissed as to EYM Group, EYM Chicken, and Pettigrew because they are not Plaintiff's employers. (D. 1 at ECF p. 7). For the reasons that follow, the Court denies the Motion to Dismiss as to Counts Six, Seven, and Eight.

The Defendants argue that "EYM Group and EYM Chicken may meet each statute's definition of an 'employer,' however plaintiff has not and cannot allege that either was her employer" because the Complaint "only identifies" EYM Illinois "as her employer and [the] presumed responsible party for any alleged unpaid wages." (D. 14 at ECF p. 7) (citing no authority); *LINC Fin. Corp.*, 129 F.3d

10

at 921 (failure to cite authorities in support of a particular argument constitutes a waiver of the issue). But that is incorrect. Under every respective Count, Plaintiff alleges "[e]ach of the Defendants is an 'employer' as that term is defined under" the FLSA, IMWL, and IWCPA, (D. 1 at ECF p. 17-19), and the Defendants also concede that the Plaintiff alleges she "performed work for the benefit of the Defendants." (D. 14 at ECF p. 7). Despite this, the Defendants maintain that is not enough. They rely on *Doe I v. Univ. of Ill.*, 2018 WL 11507775, at *4 (C.D. Ill. 2018), for the proposition that "[m]erely alleging that [Pettigrew] 'at all times acted directly or indirectly in the interests of the employer' is not sufficient to withstand a motion to dismiss with respect to individual defendants." Distinguishably, in reaching that conclusion in *Doe I*, the Court observed that the plaintiffs there had "provided no facts alleging that the individual Defendants had responsibility and control for the alleged FLSA/IMWL violations." *Id.* Here, the Plaintiff claims EYM Illinois's "workplace rules, terms of employment, and compensation policies and practices were done in concert and at the direction and control of EYM Group and EYM Chicken." (D. 16 at ECF p. 1-2). Plaintiff has also alleged common ownership and other facts in support of the Defendants' responsibility and control over the alleged violations. (D. 1 at ECF p. 4-5). Therefore, the Court denies the Motion to Dismiss as to Counts Six, Seven, and Eight.

### D

In Count Nine, the Plaintiff alleges retaliation under the IWA. (D. 1 at ECF p. 20). The Defendant has moved to dismiss because the Plaintiff failed to plead that the "information disclosed related to" EYM Illinois's "activity, policy, or practice." (D. 14 at ECF p. 8). The Plaintiff "does not dispute Defendants' Motion as to [Count Nine]" nor has the Plaintiff sought leave to amend its Complaint as to Count Nine. (D. 16 at ECF p. 11). Therefore, the Court grants the Motion to Dismiss as to Count Nine.

## IV

For the reason stated *supra*, the Court denies the Motion to Dismiss (D. 14) as to Counts One through Eight. The Court grants the Motion to Dismiss (D. 14) as to Count Nine. The Defendants are directed to file an answer within fourteen days of this Order.

*It is so ordered.*

Entered on October 28, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE