**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| DAWN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 25-cv-01021-JEH |
| | ) | |
| EYM GROUP, INC., EYM CHICKEN, L.P., | ) | Judge Jonathan E. Hawley |
| EYM CHICKEN OF ILLINOIS, L.L.C., and | ) | Mag. Judge Ronald L. Hanna |
| THOMAS PETTIGREW, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**EYM GROUP, INC.'S ANSWER TO COMPLAINT**

Defendant EYM Group, Inc. ("EYM GROUP"), by its attorneys, its answer to plaintiff's complaint, states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal jurisdiction) and 28 U.S.C. § 1367(a) (supplementary jurisdiction).

**ANSWER:    EYM GROUP states that the allegations are legal conclusions to which no answer is required.**

2.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) (venue generally) and 28 U.S.C. § 1391(b)(2).

**ANSWER:    EYM GROUP states that the allegations are legal conclusions to which no answer is required.**

**PARTIES**

3.      Plaintiff Dawn Washington ("Washington" or "Plaintiff") is an individual and citizen of Peoria, Peoria County, Illinois.

1

**ANSWER:    EYM GROUP admits that Dawn Washington is the plaintiff in this action. EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations.**

4.     Defendant EYM Group, Inc. ("EYM Group") is a for-profit corporation established in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

**ANSWER:    EYM GROUP admits.**

5.     Defendant EYM Chicken, L.P. ("EYM Chicken") is a for-profit limited partnership organized in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

**ANSWER:    Upon information and belief, EYM GROUP admits.**

6.     Defendant EYM Chicken of Illinois, L.L.C. ("EYM Chicken-IL" or "Defendant") is a for-profit limited liability company organized in Texas, with its principal business address located at 450 E. John Carpenter Freeway, Irving, Texas.

**ANSWER:    Upon information and belief, EYM GROUP admits.**

7.     Defendant Thomas Pettigrew ("Pettigrew") is an individual who, upon information and belief, resides in the State of Illinois.

**ANSWER:    Upon information and belief, EYM GROUP admits.**

**ADMINISTRATIVE EXHAUSTION**

8.     On April 27, 2023, Ms. Washington filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") against EYM Chicken-IL, Charge No. 2023SF1389 ("IDHR Charge"). The IDHR Charge is attached as **Exhibit 1**.

2

**ANSWER:    EYM GROUP admits Exhibit 1 is attached to the Complaint and, upon information and belief, admits the remaining allegations.**

9.    In her IDHR Charge, Ms. Washington alleged that EYM Chicken-IL is liable for racial harassment – hostile work environment; and constructive discharge due to race.

**ANSWER:    EYM GROUP admits an IDHR Charge of Discrimination is attached to the Complaint and states that the document speaks for itself and denies any allegation that is inconsistent with it.**

10.    At the time Washington filed her IDHR Charge, it was cross-filed with the EEOC.

**ANSWER:    EYM GROUP lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations.**

11.    On October 22, 2024, the Illinois Department of Human Rights issued its Notice of Substantial Evidence as to Counts A and B ("IDHR Notice"). The IDHR Notice is attached as **Exhibit 2**.

**ANSWER:    EYM GROUP admits Exhibit 2 is attached to the Complaint and states that the document speaks for itself and denies any allegation that is inconsistent with it.**

12.    The IDHR made a finding of substantial evidence with respect to both of Ms. Wahington's claims. *Id.*

**ANSWER:    EYM GROUP admits a Notice of Substantial Evidence is attached to the Complaint and states that the document speaks for itself and denies any allegation that is inconsistent with it.**

13.    The IDHR Notice states in part that Ms. Washington may "[c]ommence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The

civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed." *Id.*

**ANSWER: EYM GROUP admits a Notice of Substantial Evidence is attached to the Complaint and states that the document speaks for itself and denies any allegation that is inconsistent with it.**

14. Ms. Washington now files this Complaint within 90 days of receipt of the IDHR Notice.

**ANSWER: Upon information and belief, EYM GROUP admits a Complaint was filed within 90 days of the date listed on Exhibit 2 to the Complaint.**

## FACTS

### THE EYM Entities' Close Relationship

15. EYM Chicken-IL is a privately held company that managed and operated Kentucky Fried Chicken ("KFC") restaurants across Illinois.

**ANSWER: Upon information and belief, EYM GROUP admits.**

16. EYM Chicken-IL operated KFC restaurants locations at 2231 W. Glen Avenue, Peoria, Illinois 61614 ("Glen Avenue"); 603 N. Western Avenue, Peoria, Illinois 61604 ("Western Avenue"); and 5602 South Washington, Bartonville, Illinois 61607 ("Bartonville").

**ANSWER: Upon information and belief, EYM GROUP admits.**

17. EYM Chicken-IL is owned, managed, and operated by EYM Chicken.

**ANSWER: Upon information and belief, EYM GROUP admits.**

18. EYM Chicken is a KFC franchisee that owns franchises through subsidiary companies, including EYM Chicken-IL, in Illinois, Indiana and Wisconsin.

**ANSWER: Upon information and belief, EYM GROUP admits.**

19.    EYM Chicken is owned, managed, and operated by EYM Group.

**ANSWER:    EYM GROUP denies.**

20.    EYM Group owns, manages, and operates companies throughout the United States that operate restaurant franchises.

**ANSWER:    EYM GROUP denies.**

21.    EYM Group, EYM Chicken, and EYM Chicken-IL share the same business address.

**ANSWER:    EYM GROUP denies.**

22.    At all times relevant to the Complaint, EYM Group, EYM Chicken, and EYM Chicken-IL shared common ownership and management.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

23.    Diaz is EYM Group's founder, and its CEO at all times relevant to the Complaint.

**ANSWER:    The allegation does not provide a complete name for the alleged EYM GROUP founder and CEO sufficient for EYM Group to admit or deny.**

24.    At all times relevant to the Complaint, EYM Group, EYM Chicken, and EYM Chicken-IL's manager and owner was Eduardo Diaz.

**ANSWER:    EYM GROUP admits that Eduardo Gomez was the founder of EYM Group and denies the remaining allegations.**

25.    EYM Chicken-IL's July 29, 2024 Illinois Limited Liability Application for Reinstatement Following Administrative Dissolution or Revocation was submitted to the Illinois Secretary of State by EYM Chicken-IL's Director, Salvador Elias. The Application also identifies EYM Chicken as its manager.

**ANSWER:** **The allegations refers to a document that is not attached to the complaint and therefore EYM GROUP cannot admit or deny.**

26. As of January 19, 2025, Salvador Elias' LinkedIn profile provides that he has served as EYM Group's Director of Legal Services from May 2013 through November 2024.

**ANSWER:** **The allegations refers to a LinkedIn profile that is not attached to the complaint and therefore EYM GROUP cannot admit or deny.**

27. At all times relevant to the Complaint, Claudia Cavazos, was EYM Group's, EYM Chicken's, and EYM Chicken-IL's Human Resources Benefits Payroll Manager.

**ANSWER:** **EYM GROUP admits that Claudia Cavazos was the Human Resources Benefits Payroll Manager of EYM Group and denies the remaining allegations.**

28. In August 2024, EYM Chicken-IL and EYM Chicken shut down all of their respective KFC restaurants.

**ANSWER:** **Upon information and belief, EYM GROUP denies.**

29. As of January 19, 2025, EYM Group's website no longer lists EYM Chicken or any KFC restaurants as affiliated franchises.

**ANSWER:** **EYM GROUP admits.**

30. Upon information and belief, EYM Chicken no longer conducts regular business in the chicken restaurant space.

**ANSWER:** **The allegation is confusing as to what plaintiff means when she claims that "EYM Chicken no longer conducts regular business in the chicken restaurant space." Accordingly, EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

31.　　Upon information and belief, EYM Chicken no longer conducts regular business in the chicken restaurant space because EYM Group undercapitalized it.

**ANSWER:　The allegation is confusing as to what plaintiff means when she claims that "EYM Chicken no longer conducts regular business in the chicken restaurant space because EYM Group undercapitalized it." Answering further, the allegation contains legal conclusions to which no answer is required.**

32.　　The decision to close down EYM Chicken-IL's Illinois KFC restaurants was made by owners and managers of EYM Chicken and EYM Group.

**ANSWER:　EYM GROUP denies.**

33.　　EYM Chicken undercapitalized EYM Chicken-IL, leading to EYM Chicken-IL's KFC restaurants being shut down.

**ANSWER:　The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

34.　　EYM Group undercapitalized EYM Chicken and EYM Chicken-IL, leading each to cease operations.

**ANSWER:　The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

35.　　EYM Chicken-IL established work rules and established compensation rates and benefits, including but not limited to those described herein, in concert and at the direction of EYM Group and EYM Chicken.

**ANSWER:　The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

36.     EYM Group exerted control over EYM Chicken and EYM Chicken-IL's terms and conditions of employment, and EYM Chicken exerted control over EYM Chicken-IL's terms and conditions of employment.

**ANSWER:  The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

37.     EYM Group and EYM Chicken and their agents control the employee records for EYM Chicken-IL employees.

**ANSWER:  The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

38.     EYM Group and its agents established the rate and method of payment to EYM Chicken's and EYM Chicken-IL's employees, and EYM Chicken and its agents established the rate and method of payment to EYM Chicken-IL's employees.

**ANSWER:  EYM GROUP denies.**

39.     EYM Group and its agents had the power to hire and fire EYM Chicken's and EYM Chicken-IL's employees, and EYM Chicken and its agents had the power to hire and fire EYM Chicken-IL's employees.

**ANSWER:  EYM GROUP denies.**

40.     Based on the close relationship illustrated by the facts above, EYM Group and EYM Chicken have forfeited their limited liability with respect to Ms. Washington's claims.

**ANSWER:  The allegation contains legal conclusions to which no answer is required. To the extent the allegation is deemed factual, EYM GROUP denies.**

41.     Further, should Ms. Washington establish that EYM Chicken-IL is liable for the claims alleged herein, justice requires that EYM Group and EYM Chicken not be permitted to

escape EYM Chicken-IL's liabilities given that EYM Group undercapitalized EYM Chicken and EYM Chicken-IL, and EYM Chicken undercapitalized EYM Chicken-IL.

**ANSWER:    The allegations are legal conclusions to which no answer is required. To the extent they are deemed factual, EYM GROUP denies.**

Ms. Washington's Employment, Constructive Discharge, and Unpaid Wages

42.     Ms. Washington was employed by EYM Chicken-IL from 2014 until 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

43.     From the time of her hire until March 2021, Ms. Washington worked in various positions including Cook, Cashier, Shift Manager, and Manager.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

44.     In March 2021, Ms. Washington was promoted to the role of EYM Chicken-IL General Manager. As EYM Chicken-IL General Manager, Ms. Washington was responsible for overseeing the Glen Avenue, Western Avenue, and Bartonville KFC locations.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

45.     Ms. Washington served as EYM Chicken-IL General Manager until July 2, 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

46.     Ms. Washington was the only Caucasian employee at any of these locations.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

47.    At all relevant times, it was EYM Chicken-IL's policy to deliver employees' paychecks on Fridays, and for the General Managers to distribute the paychecks to employees on the following Monday.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

48.    On Friday, July 1, 2022, at approximately 9:00 a.m., Ms. Washington arrived at the Glen Avenue location.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

49.    When Ms. Washington arrived to the Glen Avenue store, two Glen Avenue employees Brittany Embrey and Roger Pickett, both of whom are not Caucasian, were waiting for their paychecks.

**ANSWER:    EYM lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

50.    Ms. Washington told Ms. Embrey and Mr. Pickett that she could not distribute their paychecks until Monday, July 4, 2022, per EYM Chicken-IL's policy.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

51.    Ms. Embrey and Mr. Pickett became irate because they would be unable to cash their checks on July 4, 2022, due to the Independence Day holiday, and because they would not have their money during the holiday weekend.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

10

52.    In full view of the KFC dining area, Mr. Pickett began screaming at Ms. Washington. Mr. Pickett called her a "fat white bitch" and a "lazy white bitch" several dozen times in the course of approximately 15 minutes. Mr. Pickett told Ms. Washington that he was going to call his sister and mother and instruct them to come to Glen Avenue location so they could "whoop [her] ass." Mr. Pickett then called someone on his cell phone and continuously referred to Ms. Washington as a "white bitch."

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

53.    Ms. Washington became fearful, and placed a telephone call to her direct supervisor, District Manager Thomas Pettigrew, from the back office of the restaurant for assistance.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

54.    During the phone call, Ms. Washington told Mr. Pettigrew of the altercation that had occurred with Mr. Pickett and Ms. Embrey.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

55.    Mr. Pettigrew reaffirmed procedure for check distribution, and instructed Ms. Washington not to give checks to employees until the following Monday.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

56.    Mr. Pettigrew told Ms. Washington that he was on his way to Glen Avenue location.

11

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

57.    During the phone call with Mr. Pettigrew, Mr. Pickett continued screaming obscenities and slurs at her, which Mr. Pettigrew heard over the telephone.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

58.    Mr. Pettigrew ordered Ms. Washington to discharge Pickett.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

59.    While still in the back office, Ms. Washington called out to Mr. Pickett and told him that he was fired.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

60.    Mr. Pickett continued to call her a "fat white bitch," a "lazy white bitch," and a "bitch ass ho."

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

61.    Ms. Washington remained on the phone with Mr. Pettigrew but that she feared for her safety. Mr. Pettigrew, acknowledging Ms. Washington's fear for her safety, instructed Ms. Washington to call the police and request that they arrive to the Glen Ave restaurant.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

12

62.    Ms. Washington placed a telephone call requesting police. The emergency services dispatcher informed Ms. Washington that police officers were on their way to the Glen Avenue location.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

63.    Upon receiving the message from the dispatcher, Ms. Washington called out to Mer. Pickett from the back office that the police were on their way.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

64.    Upon hearing this, Mr. Pickett left the premises and went to an adjacent parking lot to the Glen Avenue location.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

65.    Several police officers arrived to the Glen Avenue location within five minutes of Ms. Washington's phone call to request police.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

66.    Mr. Pickett's sister and mother also arrived at Glen Avenue location at the same time as the police, apparently in response to Mr. Pickett's to act on his previous threats of violence against her.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

67.     Mr. Pettigrew arrived at the Glen Avenue location around this time. Mr. Pettigrew spoke with the police officers, Mr. Pickett, and his family members separately.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

68.     The police left shortly after Mr. Pettigrew spoke with them, and that she was unable to make a report at the time due to their leaving.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

69.     Ms. Washington did file a police report soon thereafter.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

70.     Mr. Pettigrew brought her and Mr. Pickett together and told them that they needed to "get along."

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

71.     Mr. Pettigrew's instruction to "get along" with Mr. Pickett contradicted Mr. Pickett's [sic] instruction from just minutes earlier, when he instructed Ms. Washington to fire Mr. Pickett.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

72.     Ms. Washington then left Glen Avenue location so that she may continue her work duties at the Western Avenue restaurant.

14

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

73.    Upon arriving at the Western Avenue, an EYM Chicken-IL employee named Kendra (non-white, title and last name unknown) ("Kendra") told Ms. Washington that she had viewed a livestream on Facebook Live that began after Ms. Washington told Mr. Pickett that she had called the police.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

74.    Kendra told Ms. Washington that she observed Mr. Pickett continually refer to Ms. Washington as a "white bitch" on the Facebook Live stream, and that he accused Ms. Washington of not giving him his money.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

75.    Ms. Washington attempted to reach EYM Chicken-IL's and EYM Group's Human Resources Benefits Payroll Manager, Claudia Cavazos, via telephone, but was unable to reach her.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

76.    Ms. Washington continued to attempt to contact Ms. Cavazos for one week via telephone and left numerous voicemails. Ms. Washington never received a response.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

77.    After working for approximately an hour at Western Avenue, Ms. Washington returned to the Glen Avenue location to try to find someone to cover Pickett's hours, as she had discharged him earlier that day.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

78.    At approximately 2:00 p.m. Ms. Washington attended a managers' meeting at Glen Avenue. Mr. Pettigrew was in attendance.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

79.    During the meeting, Mr. Pettigrew reiterated EYM Chicken-IL's general policies related to attendance, dress code, and disbursement of checks.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

80.    After the meeting concluded, Ms. Washington traveled to the Bartonville location to continue working.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

81.    While she was at Bartonville, Embrey called Ms. Washington from the Glen Avenue location and told her that a former employee, Diana Cruz  was there requesting her paycheck. Ms. Embrey told Ms. Cruz that she could not receive her check until Monday.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

82.    Ms. Washington left the Bartonville location to return to the Glen Avenue location to speak with Ms. Cruz.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

83.    Ms. Washington spoke with Ms. Cruz and informed her that she could not distribute her paycheck until Monday, based on EYM Chicken-IL's policy and Mr. Pettigrew's instructions to Complainant twice that day.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

84.    Ms. Cruz became angry and threatened Ms. Washington, stating that she would call and complain "to get [her] bitch ass fired."

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

85.    Ms. Washington called Mr. Pettigrew to report what had happened with Ms. Cruz. Mr. Pettigrew told Ms. Washington not to worry about it and that he would "take care of it."

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

86.    Ms. Embrey told Ms. Washington that earlier in the day, while Ms. Washington was at one of the other EYM Chicken-IL restaurants, Mr. Pettigrew gave Mr. Pickett his paycheck and promoted Mr. Pickett to a managerial position.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

17

87.     Embrey told Ms. Washington that Mr. Pettigrew told the employees at the Glen Avenue restaurant that Ms. Washington "was the problem," and to "ignore her."

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

88.     After finishing her shift and returning home, Mr. Pettigrew called Ms. Washington at or around 6:45 p.m.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

89.     Mr. Pettigrew told Ms. Washington that he received an anonymous customer complaint about her, alleging that she was swearing at other employees while working the drive-thru window at the Glen Avenue location.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

90.     Ms. Washington disputed this and told Mr. Pettigrew that she had not worked the drive-thru window that day.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

91.     Ms. Washington requested to review the security footage that showed the basis of the alleged anonymous customer complaint. Mr. Pettigrew refused.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

92.     Mr. Pettigrew told Ms. Washington that she was a "burden."

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

93.    Mr. Pettigrew refused to give Ms. Washington any additional information regarding the alleged customer complaint.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

94.    Based on the harassment that she endured by Mr. Pickett, and Mr. Pettigrew's support of Mr. Pickett's harassment of her, Ms. Washington told Mr. Pettigrew that she would be resigning her position.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

95.    Ms. Washington did not provide Mr. Pettigrew an effective date for her resignation.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

96.    On the morning of July 2, 2022, Ms. Washington reported to work at the Bartonville location.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

97.    Mr. Pettigrew arrived to the Bartonville location and instructed her to give her keys to Bartonville Manager Tonya Smith.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

98.    Ms. Washington's last day of work for EYM Chicken-IL was July 21, 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

99.    Despite her resignation, Mr. Pettigrew convinced Ms. Washington to return to work for EYM Chicken-IL temporarily, from August 13 to August 17, 2022, to train a new General Manager.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

100.    Mr. Pettigrew and Ms. Washington reached an agreement whereby Ms. Washington would be paid at her previous hourly rate of pay.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

101.    Ms. Washington worked for one week without being placed on payroll.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

102.    After the new hire left, Pettigrew told her that she would be  terminated again because he lacked the authority to rehire her.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

103.    Ms. Washington was never paid for the work that she performed for EYM Chicken-IL from August 13 to August 17, 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

**COUNT I: IHRA HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE AGAINST EYM GROUP, EYM CHICKEN, AND CHICKEN-IL**

104.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:    EYM GROUP restates its answers to paragraphs 1 – 103 as if fully set forth herein.**

105.    The IHRA states in part:

Declaration of Policy. It is the public policy of this State:

(A)    Freedom from Unlawful Discrimination. To secure for all individuals within Illinois the freedom from discrimination based on race.…

775 ILCS 5/1-102(A).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

106.    The IHRA defines "harassment" as:

[A]ny unwelcome conduct on the basis of an individual's actual or perceived race [or] color… that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

775 ILCS 5/1-101(E-1).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

107.    The IHRA further provides that:

Civil rights violations--employment. It is a civil rights violation:

(A) Employers. For any employer… to engage in harassment as defined in subsection (E-1) of Section 2-101…. An employer is responsible for harassment by the employer's nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

775 ILCS 5/2-102(A).

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

108.     EYM Group and EYM Chicken are the alter egos of EYM Chicken-IL.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP denies.**

109.     EYM Group, EYM Chicken, and EYM Chicken-IL are each an "employer" as that term is defined under the IHRA, 775 ILCS 5/2-101(B)(1)(a).

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

110.     Ms. Washington was an "employee" as that term is defined under the IHRA, 775 ILCS 5/2-101(A)(1)(a) at all times relevant to this lawsuit.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

111.     Ms. Washington suffered multiple incidents of race-based harassment while employed by EYM Chicken-IL.

**ANSWER:** **EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

112.     The race-based harassment that Ms. Washington was subjected to was severe and pervasive, and caused Ms. Washington to fear for her safety.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

22

113.    Ms. Washington reported the racial harassment to EYM Chicken-IL and its agents.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

114.    EYM Chicken-IL and its agents failed to take any action in response to her reports of race-based harassment.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

115.    Ms. Washington reported the race-based harassment to EYM Group and EYM Chicken-IL and their agents.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

116.    EYM Group and EYM Chicken-IL and their agents failed to take any action in response to Ms. Washington's reports of race-based harassment.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

117.    EYM Chicken-IL deliberately made Ms. Washington's working conditions so difficult, intolerable, and unpleasant that it created a hostile and intimidating, work environment.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

118.    Ms. Washington had no choice but to resign her employment in light of the working conditions that EYM Chicken-IL subjected her to.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

23

119.     EYM Chicken-IL's failure to act on Ms. Washington's reports of race-based harassment resulted in her resignation.

**ANSWER:     EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

120.     EYM Chicken-IL's actions constitute unlawful discrimination and a civil rights violation under the IHRA.

**ANSWER:     EYM GROUP states that the allegations are legal conclusions to which no answer is required.**

121.     EYM Group and EYM Chicken, as alter egos for EYM Chicken-IL, is liable for EYM Chicken-IL's discriminatory actions.

**ANSWER:     EYM GROUP states that the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP denies.**

122.     Ms. Washington has been damaged by EYM Group, EYM Chicken, and EYM Chicken-IL's and EYM Group's unlawful conduct.

**ANSWER:     EYM GROUP denies.**

### COUNT II: IHRA RACE-BASED DISCRIMINATION RESULTING IN HER CONSTRUCTIVE DISCHARGE AGAINST EYM GROUP, EYM CHICKEN, EYM CHICKEN-IL

123.     Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:     EYM GROUP restates its answers to paragraphs 1 – 122 as if fully set forth herein.**

124.     The IHRA states in part:

Declaration of Policy. It is the public policy of this State:

(A)Freedom from Unlawful Discrimination. To secure for all individuals within Illinois the freedom from discrimination based on race.…

775 ILCS 5/1-102(A).

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

125.    The IHRA further provides that employers are liable for a "civil rights violation" due to race-based discrimination:

Civil rights violations--employment. It is a civil rights violation:

(A) Employers. For any employer… to act with respect to … discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination….

775 ILCS 5/2-102(A).

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

126.    EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

127.    EYM Group, EYM Chicken, and EYM Chicken-IL are each an "employer" as that term is defined under the IHRA, 775 ILCS 5/2-101(B)(1)(a).

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

128.    Ms. Washington was an "employee" as that term is defined under the IHRA, 775 ILCS 5/2-101(A)(1) at all relevant times.

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

25

129. Ms. Washington suffered multiple incidents of race-based harassment while employed by EYM Chicken-IL.

**ANSWER: EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

130. The race-based harassment that Ms. Washington was subjected to was severe and pervasive, and caused Ms. Washington to fear for her safety.

**ANSWER: EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

131. Ms. Washington reported the race-based harassment to EYM Group and EYM Chicken-IL and its agents.

**ANSWER: EYM GROUP denies.**

132. EYM Group and EYM Chicken-IL and their agents failed to take any action in response to Ms. Washington's reports of race-based harassment.

**ANSWER: EYM GROUP denies.**

133. EYM Chicken-IL deliberately made Ms. Washington's working conditions so difficult, intolerable, and unpleasant that it created a hostile and intimidating, work environment.

**ANSWER: EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

134. Ms. Washington had no choice but to resign her employment in light of the working conditions that EYM Chicken-IL subjected her to.

**ANSWER: EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

135.    EYM Chicken-IL's actions constitute unlawful discrimination and a civil rights violation under the IHRA.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

136.    As the alter egos of EYM Chicken-IL, EYM Group and EYM Chicken are liable for the discriminatory actions taken by EYM Chicken-IL.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP denies.**

137.    Ms. Washington has been damaged by EYM Group, EYM Chicken, and EYM Chicken-IL's and EYM Group's unlawful conduct.

**ANSWER:    EYM GROUP denies.**

**COUNT III: 42 U.S.C § 1981 HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE AGAINST ALL DEFENDANTS**

138.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:    EYM GROUP restates its answers to paragraphs 1 – 137 as if fully set forth herein.**

139.    Section 1981(a) provides, in relevant part:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

140. EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

**ANSWER: EYM GROUP states the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP denies.**

141. Defendant EYM Chicken-IL and Mr. Pettigrew, engaged in illegal, intentional discrimination on the basis of Ms. Washington's race, by creating a hostile work environment.

**ANSWER: EYM GROUP states the allegations are legal conclusions to which no answer is required.**

142. The harassment was severe *and* pervasive, was objectively and subjectively offensive, was humiliating, and had the effect of substantially interfering with Ms. Washington's work performance.

**ANSWER: EYM GROUP states the allegations are legal conclusions to which no answer is required.**

143. As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress and the loss of her employment.

**ANSWER: EYM GROUP denies.**

144. Defendants' actions proximately caused Ms. Washington's injuries.

**ANSWER: EYM GROUP denies.**

### COUNT IV: 42 U.S.C § 1981 DISCRIMINATION BASED ON RACE RACE-BASED DISCRIMINATION RESULTING IN HER CONSTRUCTIVE DISCHARGE AGAINST ALL DEFENDANTS

145. Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER: EYM GROUP restates its answers to paragraphs 1 – 144 as if fully set forth herein.**

146.     Section 1981(a) provides, in relevant part:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required.**

147.     EYM Group and EYM Chicken are alter egos of EYM Chicken-IL

**ANSWER:     EYM GROUP states the allegations are legal conclusions to which no answer is required. To the extent the allegations are deemed factual, EYM GROUP denies.**

148.     Defendants EYM Chicken-IL and Mr. Pettigrew engaged in illegal, intentional discrimination on the basis of Ms. Washington's race, by engaging in disparate treatment.

**ANSWER:     EYM GROUP denies it engaged in illegal, intentional discrimination on the basis of race and engaged in disparate treatment and lacks knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations.**

149.     Ms. Washington suffered adverse employment actions, to wit, Defendants creating a hostile work environment that made her working conditions so difficult, intolerable, and unpleasant that she was forced to resign.

**ANSWER:     EYM GROUP denies.**

150.     As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress and the loss of his employment.

**ANSWER:     EYM GROUP denies.**

151.     Defendants' actions proximately caused Ms. Washington's injuries.

**ANSWER:    EYM GROUP denies.**

### COUNT V: 42 U.S.C § 1981 RETALIATION AGAINST ALL DEFENDANTS

152.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:    EYM GROUP restates its answers to paragraphs 1 – 151 as if fully set forth herein.**

153.    Section 1981(a) provides, in relevant part:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

42 U.S.C. § 1981(a).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

154.    EYM Group and EYM Chicken are alter egos of EYM Chicken-IL.

**ANSWER:    EYM GROUP denies.**

155.    Defendants EYM Chicken-IL and Mr. Pettigrew engaged in illegal, retaliation, on the basis of Ms. Washington submitting a complaint regarding racial discrimination.

**ANSWER:    EYM GROUP denies.**

156.    Ms. Washington suffered adverse employment actions, to wit, Defendants creating a hostile work environment that made her working conditions so difficult, intolerable, and unpleasant that she was forced to resign.

**ANSWER:    EYM GROUP denies.**

157.    As a consequence of Defendants' conduct, Ms. Washington has suffered damages, including but not limited to severe emotional distress, lost training opportunities, disparate pay, and the loss of his employment.

**ANSWER:    EYM GROUP denies.**

158.    Defendants' actions proximately caused Ms. Washington's injuries.

**ANSWER:    EYM GROUP denies.**

**COUNT VI: FLSA FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS**

159.    Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:    EYM GROUP restates its answers to paragraphs 1 – 158 as if fully set forth herein.**

160.    The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" no less that $7.25 per hour of work. 29 U.S.C. § 206(a)(1)(C).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

161.    Each of the Defendants is an "employer" as that term is defined under the FLSA. 29 U.S.C. § 203(d).

**ANSWER:    EYM states the allegations are legal conclusions to which no answer is required.**

162.    Ms. Washington was an "employee" as that term is defined under the FLSA. 29 U.S.C. § 203(e)(1).

31

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

163.    Ms. Washington performed work for Defendants, at the direction of Mr. Pettigrew, from August 13, 2022 to August 17, 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

164.    Ms. Washington performed work for the benefit of the Defendants.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

165.    Ms. Washington received no compensation for the work that she performed during this time period.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

166.    Defendants failed to pay the FLSA-mandated minimum wage to Ms. Washington for the work that she performed during this time period.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

167.    Defendants' failure to pay Ms. Washington the minimum wage during this time period constitutes a violation of the FLSA's minimum wage provision.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

168.    Defendants' violation of the FLSA was not in good faith.

**ANSWER:    EYM GROUP denies.**

169.   Ms. Washington has been damaged by Defendants' violation of the FLSA.

**ANSWER:   EYM GROUP states the allegations are legal conclusions to which no answer is required.**

### COUNT VII: IMWL FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS

170.   Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:   EYM GROUP restates its answers to paragraphs 1 – 169 as if fully set forth herein.**

171.   The IMWL's minimum wage provision provides in part that, "from January 1, 2022 through December 31, 2022 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $12 per hour…." 820 ILCS 105/4(a).

**ANSWER:   EYM GROUP states the allegations are legal conclusions to which no answer is required.**

172.   Ms. Washington was 18 years of age at all times in 2022.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

173.   Each of the Defendants was an "employer" as defined under the IMWL. 820 ILCS 105/3(c).

**ANSWER:   EYM GROUP states the allegations are legal conclusions to which no answer is required.**

174.   Ms. Washington was an "employee" as defined under the IMWL. 820 ILCS 105/3(d).

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

175.    Ms. Washington performed work for EYM Chicken-IL, at the direction of Mr. Pettigrew, from August 13, 2022 to August 17, 2022.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

176.    Ms. Washington performed work for the benefit of the Defendants.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

177.    Ms. Washington received no compensation for the work that she performed during this time period.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

178.    Defendants failed to pay the IMWL-mandated minimum wage to Ms. Washington for the work that she performed during this time period.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

179.    Defendants' failure to pay Ms. Washington the minimum wage during this time period constitutes a violation of the IMWL's minimum wage provision.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

180.    Ms. Washington has been damaged by Defendants' violation of the IMWL.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

### COUNT VIII: IWPCA FAILURE TO PAY AGREED WAGES AGAINST ALL DEFENDANTS

181. Ms. Washington restates and incorporates all preceding Paragraphs in this Complaint.

**ANSWER:** **EYM GROUP restates its answers to paragraphs 1 – 180 as if fully set forth herein.**

182. The IWPCA provides in part:

> For all employees, other than separated employees, "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation.

820 ILCS 115/2.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

183. The IWPCA further provides that, "[e]very employer shall be required, at least semi- monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

**ANSWER:** **EYM GROUP states the allegations are legal conclusions to which no answer is required.**

184. The IWPCA further provides that, "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

185.    Each of the Defendants is an "employer" as that term is defined under the IWPCA. 820 ILCS 115/2.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

186.    Ms. Washington was an "employee" from August 13, 2022 to August 17, 2022, as that term is defined under the IWPCA. 820 ILCS 115/2.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

187.    Mr. Pettigrew hired Ms. Washington to train EYM's new General Manager.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

188.    Mr. Pettigrew and Ms. Washington reached an agreement whereby Ms. Washington would be paid at her previous hourly rate of pay.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

189.    Ms. Washington performed work under her wage agreement from August 13, 2022 to August 17, 2022, to train a new General Manager.

**ANSWER:    EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

190.    Ms. Washington performed work for the benefit of the Defendants.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

191.    Ms. Washington was never compensated for the work that she performed under the wage agreement.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

192.    Mr. Pettigrew knowingly permitted EYM Chicken-IL and EYM Group to fail to pay Ms. Washington for the work that she performed during this time period.

**ANSWER:   EYM GROUP lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations.**

193.    As such, Mr. Pettigrew is personally liable under the IWPCA. 820 ILCS 115/13.

**ANSWER:   EYM GROUP states the allegations are legal conclusions to which no answer is required.**

194.    Defendants' failure to pay Ms. Washington under the wage agreement constitutes a violation of the IWPCA.

**ANSWER:   EYM GROUP states the allegations are legal conclusions to which no answer is required.**

195.    Ms. Washington has been damaged under the IWPCA.

**ANSWER:    EYM GROUP states the allegations are legal conclusions to which no answer is required.**

**COUNT IX: RETALIATION UNDER THE ILLINOIS WHISTLEBLOWER ACT
AGAINST EYM GROUP, EYM CHICKEN, EYM CHICKEN-IL**

Count IX of Plaintiff's Complaint at Law was dismissed on October 28, 2025, and therefore does not require a response.

WHEREFORE, Defendant **EYM GROUP, INC** prays that judgment be entered in its favor and against plaintiff, that it be awarded attorneys' fees and costs incurred in defending this matter, and for such other relief this Court deems just.

Dated: November 18, 2025                                    **EYM GROUP, INC.**


                                                           By: /S/ Michael D. Lee
                                                           One of its attorneys

Michael D. Lee (ARDC 6225432)
Kelleher + Holland, LLC
102 S. Wynstone Park Drive
North Barrington, IL 60010
(847) 382-9195
mlee@kelleherholland.com

## CERTIFICATE OF SERVICE

I, Michael D. Lee, hereby certifies that pursuant to Fed. R. Civ. P. 5(a) I caused a copy of the foregoing *EYM Group, Inc's Answer to Complaint* to be electronically filed with the Clerk of the U.S. District Court of the Central District of Illinois, Peoria Division, and to be served upon the individual listed below through the ECF filing system at the below email address on November 18, 2025 before 5:00 p.m. CST.

TO:    Alexandros Stamatoglou
       The Garfinkel Group, LLC
       701 N. Milwaukee Ave.
       Chicago, IL 60642
       alex@garfinkelgroup.com


Dated: November 18, 2025                                    /S/ Michael D. Lee